**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Jane Marie Hall,                                                                Civil No. 11-1269 (DWF/LIB)

                Plaintiff,

v.                                                                                       **MEMORANDUM
                                                                                          OPINION AND ORDER**
Metropolitan Life Insurance Company,
and Dennis Lynn Hall, II,

                Defendants.

_____

Konstandinos Nicklow, Esq., Meshbesher & Spence, Ltd, counsel for Plaintiff.

William D. Hittler, Esq., Nilan Johnson Lewis PA, counsel for Defendant Metropolitan Life Insurance Company.

Gregory W. Deckert, Esq., and Molly R. Miller, Esq., Deckert & Van Loh, PA, counsel for Defendant Dennis Lynn Hall, II.

_____

**INTRODUCTION**

      This matter is before the Court on cross-motions for summary judgment brought by Plaintiff Jane Marie Hall ("Plaintiff") (Doc. No. 75) and Defendant Metropolitan Life Insurance Company ("MetLife") (Doc. No. 78).  For the reasons set forth below, the Court grants MetLife's motion and denies Plaintiff's motion.

## BACKGROUND

Dennis Lynn Hall ("Decedent") was hired by Newmont USA Limited ("Newmont") in Winnemucca, Nevada, on or about August 18, 1988. (Doc. No. 54, Second Am. Compl. ¶ 7.) MetLife issued an Employee Benefit Plan (the "Plan") to employees of Newmont, including Decedent. (*Id.* ¶ 8.) The Plan is a life insurance employee benefit plan, which provides life insurance benefits to the participant employee's beneficiary upon the death of the participant. (*Id.* ¶ 9.) Decedent obtained a life insurance policy with MetLife in the amount believed to be $120,000. (*Id.* ¶ 11.) In July 1991, Decedent named his son, Defendant Dennis Lynn Hall, II, as the beneficiary. (*Id.* ¶ 12; Doc. No. 12 ("Hittler Aff. I") ¶ 1(d), Ex. 4.)

Plaintiff married Decedent on May 7, 2001. (Doc. No. 23 ("Hall Aff. I") ¶ 2.) Beginning in or around March 2010, Plaintiff and Decedent began traveling to the Mayo Clinic in Rochester, Minnesota, on a weekly or bi-weekly basis, for medical examinations and treatment related to Decedent's cancer diagnosis. (Second Am. Compl. at ¶¶ 16; Doc. No. 77 ("Hall Aff. II") ¶ 3.) On January 25, 2011, Plaintiff and Decedent traveled to Rochester for a routine medical appointment at the Mayo Clinic the following day. (Second Am. Compl. ¶ 19; Hall Aff. II ¶ 5.) Plaintiff claims that she and Decedent expected to attend Decedent's medical appointment on January 26, 2011, and to return to their home in Akeley, Minnesota, later that same day. (Second Am. Compl. ¶ 20; Hall Aff. II. ¶ 6.) During the very early morning hours of January 26, 2011, Decedent awoke to discover that part of his body had become paralyzed. (Second Am. Compl. ¶ 22; Hall Aff. II ¶ 7.) Plaintiff called 911, and Decedent was immediately transported to the Mayo

2

Clinic via ambulance. (Second Am. Compl. ¶ 23; Hall Aff. II ¶ 7.) Decedent was informed he had a very short time to live. (Second Am. Compl. ¶ 25; Hall Aff. II. ¶ 7.) Decedent then requested that Plaintiff's daughter obtain and provide him with a blank Last Will and Testament. (Second Am. Compl. ¶ 27; Hall Aff. II. ¶ 7.) Plaintiff's daughter used a Mayo Clinic computer to do so. (Second Am. Compl. ¶ 27; Hall Aff. II. ¶ 7.)

Plaintiff's daughter then filled out the Last Will and Testament (the "Will") as directed by Decedent. (Second Am. Compl. ¶ 29; Hall Aff. II. ¶ 7.) Decedent executed the Will on January 27, 2011, which was witnessed and signed by staff members at the Mayo Clinic. (Second Am. Compl. ¶ 32; Hall Aff. II. ¶ 7.) Decedent's signature was notarized. (Hall Aff. II ¶ 7.) Decedent died later the same day. (Second Am. Compl. ¶ 34.) The Will provides:

> I, <u>Dennis Lynn Hall Sr.</u> (name), of <u>Hubbard</u> (county), <u>Minnesota</u> (state), revoke my former Wills and Codicils and publish and declare this to be my Last Will and Testament.
>
> ### ARTICLE I
> ### SPOUSE & CHILDREN
>
> I am married to <u>Jane Marie Hall</u> (name of spouse). All references to "my Spouse" refer to <u>Jane Marie Hall</u> (name of spouse). I have the following adult child(ren);
>
> Name: <u>Victoria Marie Hall Jr.</u>   Born on 2-22-72
> Name: <u>Dennis Lynn Hall Jr</u>.       Born on 7-10-74
> Name: <u>Brandy Lynn Kroubetz</u>       Born on 12-28-81
> Name: Jason Hintze                     Born on 12-22-78
>
> …

## ARTICLE IV
## DISPOSITION OF PROPERTY

Specific Bequests I direct that the following specific bequests be made from my estate.

Any and all belonging including money shall be distributed to Jane Marie Hall. If this beneficiary does not survive me, this bequest shall be distributed with my residuary estate.

Any and all life insurance and benefits shall be distributed to Jane Marie Hall. If this beneficiary does not survive me, this bequest shall be distributed with my residuary estate.

My elk hunting rifle shall be distributed to my son Dennis Lynn Hall Jr. If this beneficiary does not survive me, this bequest shall be distributed with my residuary estate.

Primary Residence My interest in my primary residence or homestead, if any, shall be distributed to my Spouse Jane Marie Hall. If my Spouse does not survive me, this bequest shall be distributed with my residuary estate.

Residuary Estate I direct that my residuary estate, including any real property and personal property, be distributed, bequeathed and given to my Spouse Jane Marie Hall. If my Spouse does not survive me, then my residuary estate and any other property not otherwise disposed of by this Will, shall be distributed in equal shares to my child(ren) Brandy Lynn Kroubetz, Jason David Hintze, Joshua James Kroubetz (name(s)). If more than one child is named then the distribution shall be in equal shares per stirpes. If none of the named child(ren) or their descendants, survive me, I direct that my residuary estate be distributed in equal shares per stirpes to: Brandy Lynn Kroubetz, Jason David Hintze, Joshua James Kroubetz.

. . .

(Doc. No. 81, ("Hittler Aff. II") ¶ 1, Ex. A (MetLife Administrative Record ("ML")) at 37-44.)

On February 2, 2011, following notification of Decedent's death, a representative at Newmont sent to MetLife a screen print of Decedent's life insurance coverage and a

4

copy of the July 18, 1991 beneficiary designation naming Dennis Lynn Hall, II as the primary beneficiary. (*Id*. at 21-32.) The representative noted that the most recent beneficiary designation was available and noted: "spouse claiming she has a will; file shows son as beneficiary (last updated 1991)." (*Id*. at 28.)

On February 10, 2011, Plaintiff's counsel notified MetLife via letter of Decedent's death and that Plaintiff was the named beneficiary of Decedent's life insurance policy pursuant to Decedent's Will. (Doc. No. 48, Nicklow Aff. II ¶ 2, Ex. A; ML at 34-36.) Plaintiff requested that MetLife pay her the proceeds of Decedent's life insurance policy. (ML at 34-36.) The February 10, 2011 letter provided, in pertinent part:

> It is my understanding my client's husband, Dennis Hall (now deceased) maintained a $125,000 life insurance policy with Met Life. I further understand the beneficiary under the above-referenced policy was his son, also Dennis Hall.
>
> My client's husband executed a Last Will and Testament (Will) on January 27, 2011 (see Exhibit 1). The Will provided, in part, that "[a]ny and all life insurance & benefits" were to be distributed to his wife, Jane Hall. Unfortunately, due to the circumstances surrounding his death, Mr. Hall did not have the opportunity, or the time, to execute a Change of Beneficiary form. The only thing he could do was execute the Will.

(*Id*. at 34.) In the letter, counsel for Plaintiff explained the unexpectedly quick nature of his death, and that "[Decedent] intended to change the beneficiary of his life insurance policy with MetLife . . . but had no time to request appropriate forms from MetLife" to do so. (*Id*. at 35-36.)

On February 25, 2011, MetLife denied Plaintiff's request for Decedent's life insurance proceeds, claiming Plaintiff was not the named beneficiary for Decedent's life insurance policy. (ML at 64-65.) MetLife explained:

5

>We have evaluated your claim for the above referenced benefits. For the reasons detailed below, we must deny your clients claim.
>
>The Plan is an employee welfare plan regulated by [ERISA]. MetLife, as claims fiduciary, must administer claims in accordance with ERISA and the documents and instruments governing the Plan. ERISA defines beneficiary as a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).
>
>. . .
>
>The Summary Plan Description for Newmont USA Limited states on page 6:
>
>. . .
>
>You can change the beneficiary on record for a particular plan at any time by contacting the Employee Service Center or, in Nevada, local HR Representative.
>
>According to our records, the latest beneficiary designation on file was completed by the decedent on July 18th, 1991, does not name your client as the beneficiary of the Plan benefits. A Will has no bearing on a Group Life Insurance benefit due to the plan provision set in place regarding beneficiaries. Therefore, based on the record before MetLife, we must deny your clients [sic] claim.
>
>Under ERISA, you have the right to appeal this decision **within sixty (60) days** after the receipt of this letter. . . .

(ML at 64-65 (emphasis in original).)

Plaintiff appealed MetLife's denial. (Nicklow Aff. II ¶ 4, Ex. C; ML at 103-05.) Through her counsel, Plaintiff also notified MetLife that Decedent had contacted Newmont and had spoken to a Newmont representative in January 2011 to express his intent to change his beneficiary designation and that the representative had sent Decedent a change in beneficiary form. (Nicklow Aff. II ¶ 9.) That form was never returned. In

6

addition, in July 2011, Plaintiff provided MetLife with a beneficiary designation form that Decedent signed in November 2010, in which Decedent named Plaintiff as the sole primary beneficiary to receive 100% of the benefits due under the life insurance policy. (*Id.* ¶ 5, Ex. D.) In a letter dated July 20, 2011, MetLife upheld the denial Plaintiff's claim, stating in part:

> This is in response to your client's request for a review of the denial of the reference claim, in accordance with ERISA. We have re-examined the entire claim file, including examination of any additional material and information provided with your request for appeal. For the reasons detailed below, we must uphold the denial of this claim.
>
> As you know, the Plan is an employee welfare benefit plan regulated by [ERISA]. MetLife, as claims fiduciary, must administer claims in accordance with ERISA and the documents and instruments governing the Plan. ERISA defines beneficiary as a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."
>
> . . .
>
> You believe the initial determination was wrong because under Minnesota Law your client should be considered beneficiary for the proceeds of this claim as under the Last Will and Testament executed on January 27th 2011. Minnesota Law is silent in regard to Group Life Insurance under an ERISA regulated plan. As described above and previously stated, according to our records, the latest beneficiary designation on file that was completed by the decedent on July 18th 1991, and does not name your client as the beneficiary of the Plan benefits. A Will has no bearing on a Group Life Insurance benefit due to the plan provision set in place regarding beneficiaries under the plan.
>
> Therefore, based on the record before MetLife, we must uphold the denial of your client's claim.

(ML at 226-227.)

Plaintiff filed suit in state district court, and MetLife removed the case to this Court. Plaintiff asserted the following four claims against Defendants: (1) Declaratory Relief; (2) Breach of Contract; (3) Conversion; and (4) Unjust Enrichment. (Doc. No. 1, Ex. 1.) The Court denied a motion to dismiss brought by MetLife. (Doc. No. 27.) Plaintiff filed a Second Amended Complaint on April 27, 2012, asserting claims for: (1) wrongful denial of life insurance benefits (ERISA); and (2) declaratory relief (against Dennis Lynn Hall, II). (Doc. No. 54.) The parties now move for summary judgment.

## DISCUSSION

### I.    Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*,

8


47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The Employee Retirement Security Act of 1874, 29 U.S.C. §§ 1001, *et seq*. ("ERISA"), governs the life insurance policy in question. The parties agree that when, as here, a plan gives discretionary authority to the plan administrator or reviewing committee to determine eligibility for benefits or to construe the terms of the plan, the Court reviews the decision to deny benefits for an abuse of discretion. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).[1] Under the abuse-of-discretion standard, an administrator's decision need only be reasonable; that is, it "must be supported by substantial evidence." *Alexander v. Trane Co.*, 453 F.3d 1027, 1031 (8th Cir. 2006). "A court is not to substitute its own judgment for that of the plan administrator." *Id*. The question for the Court is whether a "reasonable person *could* have reached a similar decision, given the evidence before him, [and] not [whether] a reasonable person *would* have reached that decision." *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 875 (8th Cir. 2006) (emphasis in original). A reasonable decision is fact based and supported by substantial evidence. *Id*.

---

[1] There is no dispute that the Plan expressly grants MetLife discretionary authority to interpret the Plan and to determine eligibility for and entitlement to Plan benefits.

Substantial evidence is "more than a scintilla but less than preponderance." *Darvell v. Life Ins. Co. of North Am.*, 597 F.3d 929, 934 (8th Cir. 2010).

A court examining whether an administrator abused its discretion, therefore, must carefully scrutinize the administrator's decision and determine whether it was "extremely unreasonable, extraordinarily imprudent, or arbitrary and capricious." *Meyers v. Hartford Life & Accident Ins. Co.*, 489 F.3d 348, 351 (8th Cir. 2007). In making that determination, the Court considers five factors: (1) whether the administrator's interpretation of the plan's terms is consistent with the goals of the plan; (2) whether the interpretation renders any language in the plan meaningless or inconsistent; (3) whether the interpretation conflicts with the requirements of ERISA; (4) whether the plan has interpreted the words at issue consistently; and (5) whether the interpretation is contrary to the clear language of the plan. *See Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1041-42 (8th Cir. 2010).

## II.     MetLife's Denial of Plaintiff's Claim for Plan Benefits

This action stems from Plaintiff's principal allegation that MetLife abused its discretion in denying Plaintiff's claim to Decedent's life insurance proceeds. Specifically, Plaintiff asserts that MetLife failed to honor Decedent's change of the named beneficiary of his life insurance policy from his son Dennis Lynn Hall, II, to Plaintiff. In this vein, Plaintiff also asserts that the relevant plan and beneficiary forms are inconsistent with respect to how a participant may change his beneficiary and that Decedent properly effectuated such a change. In the alternative, Plaintiff asserts that

Decedent "substantially complied" with MetLife's requirements to effectuate a change of beneficiary.

MetLife argues that Plaintiff's claims fail because, despite knowing what steps were necessary, Decedent did not properly submit a change of beneficiary form pursuant to the requirements of the policy. MetLife also argues that Decedent's Will, even if considered a form satisfactory to MetLife, did not designate Plaintiff as the beneficiary to the Plan benefits. Finally, MetLife asserts that the doctrine of substantial compliance is no longer valid. MetLife both opposes Plaintiff's motion for summary judgment and separately moves for summary judgment on Plaintiff's claims. In support of its motion for summary judgment, MetLife argues that: (1) a will cannot effectuate a change in beneficiary under the Plan because life insurance proceeds are non-probate assets; (2) MetLife's benefit determination was not an abuse of discretion; and (3) it was not unreasonable to pay Plan benefits to Dennis Lynn Hall, II.

Under the terms of the Plan, benefits are to be paid to a claimant upon receipt of "Proof" that the person has satisfied the conditions and requirements to receive Plan benefits. (ML at 180, 215, 220-222.) "Proof" is defined as "Written evidence satisfactory to Us [MetLife] that a person has satisfied the conditions and requirements for any benefit." (*Id*. at 215.) The Plan states the following with respect to changing a beneficiary:

> You [the employee insured under the policy] may change your Beneficiary at any time. To do so, You must send a Signed and dated, Written request to the Policyholder [Newmont] using a form satisfactory to Us [MetLife]. Your written request to change the Beneficiary must be sent to the Policyholder within 30 days of the date You Sign such request.

11

>You do not need the Beneficiary's consent to make a change. When We receive the change, it will take effect as of the date You Signed it.

(*Id.* at 216.)[2]

Plaintiff asserts that Decedent's Will, the November 2010 Change in Beneficiary Designation, and other information provided to MetLife, particularly regarding the unexpected circumstances of Decedent's death, were more than sufficient to effectuate a change of beneficiary. Plaintiff asserts that MetLife abused its discretion by denying Plaintiff's claim and should be ordered to pay Plaintiff the proceeds of Decedent's life insurance policy.

In 1991, Decedent executed a beneficiary form designating his son, Dennis Lynn Hall, II, as his sole beneficiary.[3] After his cancer diagnosis, Decedent contacted

---

[2] Newmont's Summary Plan Description ("SPD") provides the following:

>A "beneficiary" is any person or organization, except your employer, whom you wish to receive Group Life and AD&D benefits if you die . . . .
>
>You may obtain a beneficiary form by clicking on the following link—**beneficiary form** . . . .

(ML at 4.) The SPD further provides:

>You can change the beneficiary on record for a particular plan at any time by contacting the Employee Service Center or, in Nevada, local HR representative.

(*Id.*)

[3] In her opposition to MetLife's motion for summary judgment, and in response to MetLife's contention that the Plan requires a participant who wishes to change a

(Footnote Continued on Next Page)

Newmont twice to obtain beneficiary designation forms, once in November 2010 and again in January 2011. In July 2011, several months after Decedent's death and while MetLife was conducting an administrative review of Plaintiff's appeal of the denial of benefits, Plaintiff sent MetLife a beneficiary designation form signed by Decedent in November 2010. Still, MetLife upheld its initial decision to deny Plaintiff's request for benefits by letter dated July 20, 2011, explaining in part that the latest beneficiary form on file was the 1991 form and that the form did not designate Plaintiff as beneficiary. In order to effectuate a change in beneficiary, the Plan requires participants to send a form to Newmont that is "satisfactory to" MetLife within 30 days of signing the forms. (ML at 216.) There is no dispute that Decedent did not submit the November 2010 beneficiary form changing his designation from Dennis Lynn Hall, II to Plaintiff within 30 days of signing the form. Therefore, the Court concludes that it was not unreasonable for MetLife to deny the effect of the November 2010 beneficiary form.

Plaintiff also argues that the Decedent's Will meets the criteria for changing a beneficiary and that MetLife abused its discretion by determining that the Will could not

---

(Footnote Continued From Previous Page)

beneficiary *personally* submit the form, Plaintiff calls into question whether the 1991 beneficiary designation was properly submitted by asserting that MetLife has offered no evidence that Decedent personally sent in the 1991 designation. This argument is without merit, as the terms of the Plan in effect as of 1991 are not before the Court and Plaintiff has not previously disputed that Decedent properly named Dennis Lynn Hall, II as his beneficiary to the Plan benefits in 1991.

13

effectuate a beneficiary designation change.[4] In particular, Plaintiff asserts that the Will met the "substantive requirements" of the Plan. Again, under the Plan terms, the plan participant is required to sign and date a form "satisfactory" to MetLife and to send that form to Newmont within 30 days of signing. Plaintiff submitted Decedent's Will to MetLife,[5] and MetLife determined that Decedent did not designate Plaintiff as a beneficiary and that the Will did not constitute a beneficiary designation under the Plan terms. Specifically, MetLife determined that the Will was not a "satisfactory" form by which Decedent could change his beneficiary under the terms of the Plan. MetLife explains that it reached this decision because Plan benefits constitute non-probate assets and a will cannot directly dispose of non-probate assets. (Doc. No. 82 ("O'Dell Aff.")) ¶ 4.)[6] Moreover, MetLife explains that, even if MetLife treated the disposition of Plan

---

[4] By Order dated January 5, 2012, the Court denied MetLife's motion to dismiss, concluding that "it was not clear to the Court why a properly witnessed and executed Last Will and Testament, provided within thirty days of its signature, would not constitute a 'form satisfactory' to MetLife sufficient to effectuate a change in beneficiary of a life insurance policy." (Doc. No. 27 at 6.) The Court also explained that "[s]uch an issue, however, as well as any relevant factual disputes, are not before the Court for purposes of the [motion to dismiss]." (*Id.*) That issue is now before the Court.

[5] MetLife points out that Plaintiff failed to meet the requirements of the Plan because she, and not the participant (Decedent) sent the form to MetLife (not Newmont). In addition, the November 2010 beneficiary form was sent to MetLife by Plaintiff, not Decedent, the plan participant. While these facts could demonstrate a failure to abide by the Plan requirements for changing a beneficiary, these facts do not drive the Court's ultimate decision in this case.

[6] Plaintiff asserts that O'Dell's affidavit should not be considered because (1) there is no evidence that Ms. O'Dell was involved in the decision making process with respect to Plaintiff's claim, or has any specific knowledge as to the actual reasons for the denial
(Footnote Continued on Next Page)

benefits in a will as a valid beneficiary designation change, the Will would have been insufficient to change the Decedent's beneficiary to Plaintiff. Specifically, MetLife points out that Decedent's Will bequeaths life insurance proceeds "from [Decedent's] estate" and Decedent's estate was *not* the designated beneficiary of the benefits at issue here. Thus, MetLife submits that in order for Plaintiff or the estate to have been the beneficiary, MetLife would have needed a validly executed beneficiary designation form designating Plaintiff or the estate as beneficiary. It did not receive such a form. For these reasons, the Court cannot conclude that it was unreasonable for MetLife to determine that the Will did not effectuate a change in beneficiary.[7]

Based on consideration of the relevant factors, the Court cannot say that MetLife abused its discretion in deciding to pay benefits to Dennis Lynn Hall, II rather than Plaintiff. In particular, the Court concludes that MetLife did not abuse its discretion in denying the effect of the November 2010 beneficiary form; nor did it abuse its discretion

---

(Footnote Continued From Previous Page)

of Plaintiff's request for benefits, and (2) because Ms. O'Dell does not state that she has personal knowledge as to whether the issue of non-probate classification was considered. The Court concludes that the O'Dell affidavit touches on MetLife's position, as stated in its letters explaining the denial of Plaintiff's claim, that the Will could not effectuate a change of beneficiary and does not provide any new rationale for that denial. The Court considers the affidavit, but notes that even without consideration of the affidavit, the Court's decision would be the same.

[7]  That being said, the terms of the Will could be reasonably interpreted to demonstrate Decedent's intent to leave all life insurance proceeds to Plaintiff and, in the event that Plaintiff did not survive Decedent, to leave his life insurance proceeds to all of his children *except* Dennis Lynn Hall, II.

15

in determining that the Will did not effectuate a change in beneficiary.  MetLife considered all of the information Plaintiff submitted in support of her claim for benefits, explained the basis of its decision, and based its decision on substantial evidence, and did so consistently with the terms of the Plan.  The Plan requires that participants submit a "satisfactory" form in order to effectuate a change in beneficiary.  The last beneficiary form on file with MetLife at the time of Decedent's death was the 1991 form naming Dennis Lynn Hall, II.  Further, MetLife's interpretation of the Plan is consistent with the goal of providing clear rules for participants in changing a beneficiary designation, and MetLife consistently followed its interpretation.

Finally, the Court notes that MetLife's decision is also in accordance with the relevant case law.  In *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009), the Supreme Court adopted the "plan documents rule," under which plan administrators look solely at "the directives of the plan documents" when determining how to disburse plan benefits.  *Id*. at 299-300, 303 (holding that the plan administrator did its statutory ERISA duty by paying benefits in conformity with the plan documents).  The Supreme Court explained that ERISA's statutory scheme is built around reliance on written plan documents, which allows for a "uniform administrative scheme" under which to guide the processing of claims, while avoiding the pitfalls of requiring administrators to judge a participant's intent.  *Id*. at 300-01.  Specifically, in *Kennedy*, the Supreme Court rejected the argument that a plan participant's ex-wife, who was the named beneficiary to plan benefits, waived her claim to those benefits via a divorce decree divesting her of any right to the proceeds.  *Id*. at 288-89, 299-300.

16

Instead, the Supreme Court concluded that the plan administrator was not required to honor the ex-wife's waiver, but was instead statutorily required to distribute benefits in accordance with the plan documents. *Id*. at 299-300. The Supreme Court recognized that requiring plan administrators to analyze waiver would involve questions about "whether a claimed federal common law waiver was knowing and voluntary, whether its language addressed the particular benefits at issue, and so forth, on into factually complex and subjective determinations." *Id*. at 302. Further, in *Matschiner v. Hartford Life and Accident Insurance Co.*, 622 F.3d 885 (8th Cir. 2010), the Eighth Circuit applied the "plan documents rule" to the denial of a claim for life insurance benefits under an ERISA plan, and found that the claims fiduciary did not abuse its discretion when it did not accept a divorce decree (non-plan document) where there was no beneficiary designation consistent with the decree, and instead paid benefits in accordance with the beneficiary designation on file. *Id*. at 889.[8]

## CONCLUSION

In light of the above, the Court finds that MetLife offered a reasonable explanation for its decision, and the decision to deny Plaintiff's claim was supported by substantial evidence. That is not to say that another reasonable interpretation was not possible. For example, when MetLife learned Plaintiff was disputing that Dennis Lynn Hall, II, was the proper beneficiary, it could have deposited the life insurance proceeds with the Court and

---

[8] The *Kennedy* and *Matschiner* decisions foreclose the application of the substantial compliance doctrine under federal common law.

sought dismissal from the action. Still, MetLife was not required to do so. Moreover, Plaintiff makes a compelling case that Decedent clearly intended to leave her the Plan benefits; however, it was not an abuse of MetLife's discretion to disregard the intent-specific facts and, instead, to act in accordance with the plan documents it reasonably concluded to be controlling. *See Matschiner*, 622 F.3d at 888 ("[W]e conclude that [the plan administrator] acted in accordance with the plan documents and therefore did not abuse its discretion."). That the Court would have come to a different conclusion does not warrant the reversal of MetLife's decision.[9] Accordingly, the Court grants MetLife's motion for summary judgment insofar as it seeks a ruling that it did not abuse its discretion in denying Plaintiff's claim for Plan benefits. The Court also denies Plaintiff's motion for summary judgment.[10]

---

[9] Sadly, following the written plan documents consistent with ERISA's statutory scheme, here, is quite likely at odds with Decedent's true intention, which appears to have been to leave his life insurance benefits to Plaintiff, and if not to Plaintiff, then to his children other than Dennis Lynn Hall, II. One would hope that a son, faced with such evidence of his father's apparent last wishes, would try to honor them. However, on the record before the Court, this unfortunate situation does not justify a reversal of MetLife's decision.

[10] Because the Court grants MetLife's motion for summary judgment against Plaintiff, MetLife's motion for summary judgment insofar as it is asserted against Dennis Lynn Hall, II is moot.

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendant Metropolitan Life Insurance Company's Motion for Summary Judgment (Doc. No. [78]) is **GRANTED IN PART** as follows: MetLife's adverse determination of Plaintiff's claim for Plan benefits was not an abuse of discretion.

2. Plaintiff's Motion for Summary Judgment (Doc. No. [75]) is **DENIED**.

3. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: January 15, 2013             s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge